IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CHERYL LEWIS-SMITH,** )<br>　**Plaintiff,** )<br> )<br>　v. )<br> )<br>**SUMNER COUNTY GOVERNMENT** )<br>**BOARD OF COMMISSIONERS, et al,** )<br>　**Defendants.** ) | Civil Action No. 3: 23-cv-01248<br>Judge Richardson / Frensley |

**REPORT AND RECOMMENDATION**

This fee-paid, pro se employment discrimination action is before the Court on defendant's motion for summary judgment. Docket No. 14. The motion is fully briefed and ready for disposition. After reviewing the record and the briefs, the undersigned recommends that defendant's motion be granted in its entirety, and the action be dismissed.

## I.    BACKGROUND

Plaintiff Cheryl Lewis-Smith, who is African American, is the former director of the Sumner County, Tennessee, Human Resources (HR) Department. She filed this suit after the elimination of her position with the department. Docket No. 1. In her pro se form Complaint, Plaintiff asserts the County defunded the HR Department budget for 2023-2024 without proper notification to prepare accordingly and that no severance was provided. Docket No. 1, p. 5. Plaintiff checks the boxes and asserts claims under Title VII of the Civil Rights Act of 1964, (Title VII), the Age Discrimination in Employment Act (ADEA), the American with Disabilities Act (ADA), the Family Medical Leave Act (FMLA), as well as the Genetic Information Nondiscrimination Act of 2008 (GINA), the Tennessee Whistleblower Statute, and for retaliation. Id.  She seeks, among other things, one million dollars ($1,000,000.00) in damages.

In addition to the Sumner County Government Board of Commissioners and Directors, Plaintiff initially named as defendants John C. Isbell, County Mayor; Eric Sitler, Law Director; and David Lawing, County Financial Director. By order dated April 24, 2024, the district judge dismissed the individually named defendants from the action. Docket No. 12. The court dismissed Plaintiff's claims against the individual defendants under Title VII, the ADA, and the ADEA, and all claims under the FMLA, the Whistleblower statute, and for retaliation. Docket No. 11, p. 5-7.

Sumner County now moves for summary judgment on all remaining claims. In support of its motion, the County submitted excerpts of Plaintiff's deposition; a Statement of Undisputed Material Facts; the sworn declaration of Kimberly White, County Claims Manager; Plaintiff's Employment Agreement with the County; correspondence informing Plaintiff of her discharge; her Separation Notice; Tennessee Department of Labor Employee Termination/Separation notice; and EEOC documents. Docket Nos. 15-16 and attached exhibits.

Plaintiff opposes the motion but has submitted no factual evidence in support. Docket No. 21.

The evidence proffered by the County reveals the following. The Sumner County HR Department, as well as its Director Position, were established in 2021. Docket No. 15-1, p. 5-6; Docket 15-2, p. 2. Kimberly White, Claims Manager, attested in her declaration that in August 2021 Sumner County eliminated its Risk Management Department and created an HR department headed by Plaintiff. During that time, Sumner County split the human resources duties between its Law Department and its Finance Department. Docket No. 15-2, p. 2. In 2023, the County eliminated its HR Department. After eliminating the HR Department, the County resumed splitting the human resources work between its Law Department and Finance Department. When the HR Department was dissolved, White moved to a different department, continuing to handle risk

management duties but no longer performing HR functions. White was not aware of Sumner County utilizing genetic information in making employment decisions. Nor was she aware of it requesting, requiring, or purchasing genetic information about its current or potential employees. Id., p. 3.

By its terms, Plaintiff's Employment Agreement (Agreement) with the County began on June 13, 2022, and ended on June 30, 2023. Docket No. 15-1, p. 39. Section 3 of the Agreement provides: "[a]t the end of the terms of this Agreement, Employee shall remain as an employee at will unless the Agreement is ended pursuant to these terms or renewed for an additional term." Id at p. 39. Sections 6 and 8 of the Agreement provide for a separation payment and a buyout, respectively, if the County took an adverse employment action against Plaintiff before her Employment Agreement terminated. Id, at p. 40.

In hand-delivered correspondence dated July 3, 2023, John Isbell, County Mayor, informed Plaintiff that "[t]he Sumner County Board of Commissioners [had] made the decision to eliminate the [County's] Human Resources [Department] and reassign the job tasks. The funding for the office ended on June 30, 2023, and [Plaintiff's] position has been eliminated." Id, at p. 32.

Plaintiff testified to the following at her deposition. Docket No. 15-1. In light of the defunding of the Department, the County should have been able to place her into a new position as they did with Kimberly White. Docket No. 15-1, p. 12. White kept her position and was placed in a different department while she was not. Id.

Plaintiff objected or refused to provide answers to the following questions: (1) the reasons she believes Sumner County discriminated against her based on race; (2) the identity of any specific individual who discriminated against her because of her race, color, gender, sex, religion, or national origin; (3) the nature of her alleged disability and whether she had ever requested

3

accommodation for it; and (4) whether she had ever undergone genetic testing and if such information was ever disclosed to the County. Docket No. 15-1, pp. 13-19.

When asked the basis for her belief that the County discriminated against her based on her race, Plaintiff responded, "I have listed the information. I have outlined the information in my complaint"; "I have listed the information, and I have clarified the information in my response."; "I refuse to answer because the information is clearly listed in the complaint and in my responses." Id., pp. 13-14.

When asked to name a specific individual who discriminated against her on the basis of race and color, Plaintiff testified: "I am not – I have not listed anything outside of what is in this complaint"; "I – I am not – I have listed everything accordingly, in my response"; "I have listed the information in my complaint"; "I have listed the information.· Upon this becoming a court documented trial, at that time, if I need to move forward with the proper interrogatories and the information, when I have counsel to clearly be able to facilitate understanding -- again, I repeat, I am pro se.· And what is listed in my complaint is what is in my complaint." Docket No. 15-1, pp. 14-15.

When asked to name any specific individual who discriminated against her based on her gender and sex, Plaintiff testified: "I have included my information in my response and in the complaint";  I have not said I cannot identify. I am not moving forward with any additional information because this is not a trial." Id., pp. 15-16.

During her deposition, when asked to identify a specific person who discriminated against her because of her religion, Plaintiff testified: "I have identified my complaint. I have provided information. Again, if we are in a trial, we will move forward with the proper protocol. So, my complaint is my complaint, as pro se."  Id., p. 16.

4

When Plaintiff was asked whether she could identify a specific person who discriminated against her based on national origin, she responded as follows: "I am going to identify -- I did not say that I cannot identify. It is in my complaint." Docket No. 15-1, pp. 17-18.

When Plaintiff was asked in her deposition if she could identify a specific person who discriminated against her based on her disability, she responded: "I am not saying I can identify. I am not saying I cannot. My basis is clearly denoted in my response and the complaint, as pro se." Id., pp. 17-18.

When asked whether she ever requested an accommodation for her alleged disability from the County, Plaintiff testified, "Objection. I refuse to answer the question because you're subjective -- you're subjecting -- it -- no, I won't -- I -- I object." Id., p. 18. When asked why she believes she was discriminated against because of her disability, Plaintiff responded: "It is in my complaint." Id. When Plaintiff was asked to describe the nature of her disability, the duration of her disability, and how the disability affects her work and activities of daily living, she responded: "It is in my complaint, but I object to that reasoning because of confidentiality and HIPAA." "I object to that line of questioning." "I object to that question." "I object to that question." Id., p. 18.

When asked whether her genetic information was provided to Sumner County, Plaintiff testified: "I object to that question. Any information that has been provided is in the response or the complaint or the -- the actual response." Id., p. 18. When further asked how Sumner County discriminated against her based on genetic information, Plaintiff testified: "I object to that question. I repeat, the answers are in the response and in the complaint, as pro se. Upon this going into trial, the appropriate counsel will be assigned to be able to help defer or move forward as far as -- or delineate that information. I am pro se." Id., p. 19. Upon being asked to identify a specific person who discriminated against her based upon her genetic information, Plaintiff testified: "I

object to your question. I repeat, I am pro se. The information has been listed in the complaint and the response." Id., p. 19.

Plaintiff's direct supervisors were Anthony Holt, then County mayor, and his successor, John Isbell. Docket No. 15-1, p. 7. Plaintiff and Kimberly White did not share the same supervisor, and their job duties were distinct. Id., pp. 7-8, 19-20. Plaintiff finally testified that budget constraints were a legitimate reason for the County to eliminate its HR department, that the HR Director position she held was an exempt FLSA position, and that the County compensated her properly. Id. pp. 6, 10.

## II. LAW AND ANALYSIS

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F. 3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan,* 578 F. 3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

At this stage, " 'the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 252 (1986).

An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan,* 578 F. 3d at 374 (citing *Anderson,* 477 U.S. at 252).

Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers and therefore should be liberally construed. *Williams v. Curtin*, 631 F. 3d 380, 383 4 (6th Cir. 2011). Pro se litigants, however, are not exempt from the requirements of Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989). The Court is not required to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life. Ins. Co.*, 518 F. 2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)(a court cannot create a claim that a plaintiff has not spelled out in his pleading); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2), stating "[n]either this court nor the district court is required to create [plaintiff's] claim for her"). To demand otherwise would require the "courts to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985).

Local Rule 56.01(c) requires a plaintiff's response to include a "Response to Statement of Facts" that responds to each fact enumerated in defendant's Concise Statement of Undisputed Facts. Local Rule 56.01(c) ("[T]he non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment."). Plaintiff has failed to do so. As Plaintiff failed to respond to the County's Statement of Undisputed Facts, each such Fact is deemed admitted. Consequently, the court deems the County's asserted facts undisputed for purposes of

summary judgment. Local Rule 56.01(f).

    A.    Title VII

To establish a *prima facie* case of racial discrimination, a plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a person outside of the protected class was treated more favorably than she. *Clay v. United Parcel Serv., Inc.*, 501 F. 3d 695, 706 (6th Cir. 2007).

A plaintiff whose employment position is eliminated in a reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons. *Ridenour v. Lawson Co.*, 791 F. 2d 52, 57 (6th Cir. 1986). As long as employers do not act with discriminatory intent, they may eliminate positions in the name of economic necessity or efficiency, even when those positions are held by more senior workers. *See Barnes v. GenCorp Inc.*, 896 F. 2d 1457, 1469 (6th Cir. 1990) (ADEA case; an employer has no duty to permit an employee to transfer to another position or displace workers with less seniority when the employee's position is eliminated as part of a work force reduction.).

The County admits the first three elements for a prima facie case are established, but argues Plaintiff cannot establish the fourth element, that she was treated less favorably than a similarly situated individual outside of her protected class. Docket No. 15, p. 5. The undersigned agrees.

At her deposition, Plaintiff contended Kimberly White received preferential treatment over her following dissolution of the HR department. She argues that following dissolution of the HR department, White was assigned to a similar position in a different department while she was not.

Plaintiff and White were not similarly situated, however. As HR Director, Plaintiff's direct supervisor was Anthony Holt, then County Mayor. Docket No. 15-1, p. 7. White reported directly to Plaintiff, and their job responsibilities were distinct. Id., pp. 7-8. *See*, *McMillan v. Castro*, 405

F. 3d 405, 414 (6th Cir. 2005) (whether employees dealt with the same supervisor is relevant in a particular case depends on the facts presented.). In 2021, after the County eliminated the Risk Management Department, White transitioned to the newly formed HR Department led by Plaintiff as a claims manager. Docket No. 15-2, pp. 2-3. In that role, White's duties remained largely the same, with the addition of some HR responsibilities. Id. When the HR Department was dissolved in 2023, White transferred to a different department and returned to her title of claims manager where she continued to performed risk management duties and no longer performed the HR functions she had assumed in 2021. Docket 15-2, p. 3. The evidence therefore demonstrates that since the dissolution of the HR Department, White has been performing different job duties in a different department. As Plaintiff and White were not similarly situated, she fails to establish the fourth element for her prima facie Title VII case.

Moreover, the County presented evidence that the dissolution of Plaintiff's position was due to budgetary reasons, not discrimination. Docket No. 15-1, pp. 32, 37-38. Plaintiff testified at her deposition that budget limitations were a legitimate reason for the elimination of her position. Docket No. 15-1, p. 10. As the County had a legitimate, nondiscriminatory reason for her discharge, summary judgment is appropriate.

### B. Americans with Disabilities Act (ADA)

In her Complaint, Plaintiff specified a heart condition, meningioma, and spondylosis, as her disabilities. Docket No. 1, p. 4. To establish a prima facie case of disability discrimination, a plaintiff must show: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Macy v.*

*Hopkins Cnty. Sch. Bd. of Educ.*, 484 F. 3d 357, 365 (6th Cir. 2007) (quotation omitted).

At her deposition, Plaintiff objected to or refused to answer any questions related to her alleged disability. Docket No 15-1, pp. 17-18. As a result, there is no factual support that Plaintiff has a disability, that the County was aware of her alleged disability, or that she ever requested an accommodation. Nor is there any evidence she was treated less favorably than a similarly situated, non-disabled employee. Even if similarly situated employees existed within the HR Department, their positions, like Plaintiff's, were dissolved due to a reduction in force due to budget constraints rather than any discriminatory motive. *Terre v. Hopson*, 708 F. App'x 221, 225 (6th Cir. 2017) (eliminating a position due to budget limitations is a legitimate, nondiscriminatory reason.). Because Plaintiff has failed to establish any elements of a prima facie case, the County is entitled to summary judgment on Plaintiff's ADA claim.

    C.    **Fair Labor Standards Act (FLSA)**

The Fair Labor Standards Act (FLSA) requires employers to pay overtime for employees who work more than forty hours in any work week. 29 U.S.C. § 207(a)(1). The position description for the HR Director, the position that Plaintiff held, states that the position is exempt based on the FLSA. Docket No. 15-1, p. 35. Moreover, Plaintiff testified at her deposition that her position was an FLSA exempt position, and that the County compensated her properly. Id., pp. 6, 10. Section 13(a)(1) of the FLSA, codified at 29 U.S.C. 213(a)(1), exempts any employee employed in a bona fide executive, administrative, or professional capacity or in the capacity of outside salesman. Human resources managers meet the requirements for the administrative exemption. *See* 29 C.F.R. § 541.203(e) (human resources managers who formulate, interpret, or implement employment policies "generally meet the duties requirements for the administrative exemption."). Accordingly, Plaintiff's FLSA claims against the County fail as a matter of law.

### D. Equal Pay Act (EPA)

The Equal Pay Act (EPA) prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. *Beck–Wilson v. Principi*, 441 F. 3d 353, 359 (6th Cir. 2006). To establish a prima facie case of wage discrimination under the EPA, a plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. *Id.* (quotation omitted). Proof of discriminatory intent is not required to establish a prima facie case under the EPA. *Id*. at 360. Once the plaintiff establishes a prima facie case, the defendant must "prove" that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt Cnty. Bd. of Educ*., 134 F. 3d 796, 799 (6th Cir. 1998). "[A] defendant bears both the burden of persuasion and production on its affirmative defenses." *Beck–Wilson*, 441 F. 3d at 364–65. Finally, if the defendant proves an affirmative defense, the plaintiff "must come forward with evidence demonstrating the existence of a triable issue of fact" regarding pretext. *Timmer v. Michigan Dep't of Commerce*, 104 F. 3d 833, 844 (6th Cir. 1997).

Plaintiff's EPA claim fails because she has presented no evidence the County paid her less than a male counterpart for equal work. There is no factual support-- nor does the Complaint even allege--facts to support Plaintiff's claim. As noted earlier, Plaintiff testified that the County compensated her properly. Accordingly, Sumner County is entitled to summary judgment on Plaintiff's EPA claim.

### E. Genetic Information Act (GINA)

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers from requesting, requiring, or purchasing genetic information with respect to an individual or family member of the individual subject to certain exceptions. 42 U.S.C. § 2000ff §2(b).

Plaintiff has presented no evidence that supports the contention that the County ever requested, required, or purchased her genetic information. *Cf. Taylor v. Vanderbilt Univ.*, No. 23-5283, 2023 WL 109472192023 (6th Cir. Nov. 1, 2023) (affirming Rule 12(b)(6) dismissal of GINA claim because nothing in the Complaint suggested plaintiff was subjected to a genetic test or that her employer was provided with the results of a test). At her deposition, Plaintiff refused to answer whether the County subjected her to genetic testing or whether her genetic information was provided to the County. Docket No. 15-1, p. 18. Additionally, Kimberly White attested that that she was not aware of the County utilizing, requesting, requiring, or purchasing genetic information about current or potential employees. Docket No. 15-2, p. 3. Accordingly, Sumner County is entitled to summary judgment on Plaintiff's GINA claim.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends that Sumner County's motion for summary judgment (Docket No. 14) be **GRANTED** and the claims against it be **DISMISSED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**